IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

v.

Case No.:  18-cr-00029-wmc

MARK E. BARTZ,

Defendant.

GOVERNMENT'S SENTENCING MEMORANDUM

I.    **Introduction**

The defendant, Mark Bartz, is a serial sexual predator.  Now 48 years old, he has been preying on children for over thirty years—sexually abusing them, recording the sexual abuse, and creating and administering social media platforms so that he and like-minded predators could distribute to each other the recordings of sexual abuse.  In short, he has spent a lifetime victimizing children.

Having finally been caught and pleaded guilty to two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), he now faces sentencing by this Court.  The Guidelines sentence for his offenses is life, capped at the maximum statutory sentence for the counts of conviction: sixty years.  As explained below, such a sentence is sufficient but not greater than necessary to reflect the gravity of the defendant's crimes and to meet the other sentencing factors under 18 U.S.C. § 3553(a) for spending a lifetime sexually exploiting the most vulnerable members of our society.

II.    **Factual Background**

A.    The Defendant's Long-term Sexual Abuse of Numerous Children

Since the mid-1980s, and continuing until his arrest at the age of 48 earlier this year, the defendant has used positions of trust to gain access to children and then sexually abuse them.  Among his tactics, he started a baby-sitting service in Deerfield, Wisconsin, where he regularly baby-sat six boys, aged 8 to 10 years old, for three years and repeatedly sexually abused at least two of them.  *See, e.g.*, PSR ¶ 39 (reporting that the defendant performed oral sex on the children in his care, and that the abuse occurred at least twice a week and continued for an entire school year for one of the young boys).

Later, Bartz repeatedly sexually abused three other boys to whom he stood in a position of trust.  *See, e.g.*, PSR ¶ 40 (reporting that the victims were 7 to 8 years old at the time the abuse began, that the abuse continued for approximately a decade for two of the victims, and that the abuse included the defendant's performing oral sex on the children as well as having a child perform oral sex on him).  The abuse occurred even when other individuals were present in the house.

Around this same time, the defendant also sexually abused a 10-year-old girl to whom he stood in a position of trust.  *See, e.g.*, PSR ¶ 41 (reporting that the defendant touched the girl's vagina on two occasions).

B.    The Defendant's Production and Distribution of Child Pornography

As the defendant grew older, his victims grew younger, including a toddler girl and an infant boy—the victims of the current counts of conviction.  *See, e.g.*, PSR ¶¶ 7,

29-31.  The defendant also took advantage of advances in technology to facilitate and expand the scope of his crimes.  In addition to the hands-on abuse, the defendant began producing child pornography, photographing his victims engaged in sexually explicit conduct.  *See, e.g.*, PSR ¶¶ 2, 6-7.  He also began using the Internet and multiple social media platforms to find like-minded individuals, obtain images of other children being sexually abused from those individuals, and distribute the images of his own victims and other children being sexually abused to those individuals.  *See, e.g.*, PSR ¶¶ 9-18, 26-28, 46-50.

For example, on June 26, 2017, the defendant took a lascivious photograph of the infant boy, naked from the waist down, focusing on the victim's penis.  PSR ¶ 17 (describing the subject of Count II, to which the defendant has pleaded guilty).  On July 3, 2017, the defendant took a lascivious, close-up photograph of the toddler girl's vagina.  PSR ¶¶ 13, 15 (describing the subject of Count I, to which the defendant has pleaded guilty).

The defendant subsequently shared these images with other predators on an online media-sharing website and mobile application (herein "Website A"), in chat rooms he co-administered that were devoted to trading images of child sexual abuse and discussing the sexual abuse of children.  *See* PSR ¶¶ 13, 17.  For instance, on September 3, 2017, he posted the lascivious image of the infant with the comment, "I love him sucking me."  On September 4, 2017, after posting the lascivious image of the toddler, he commented, "I have to get more of me and her together" and "Her brother is better but she is still fun."

3

Meanwhile, the defendant had also been sharing child pornography, and discussing the sexual abuse of children, on another online media-sharing website and mobile application (herein "Website B"). *See* PSR ¶ 27. The defendant had first gained entry to a Website B chat group devoted to child pornography, in April of 2017, by sending an image of an adult molesting an infant. When asked by another member if he had "ever been with a child?" he responded, "Oh yes lots of them," from ages "0 on up." He subsequently posted images of boys being orally and anally penetrated and encouraged other members of this self-described "family" of offenders to post.

He also continued to discuss his ongoing sexual abuse of children in the Website B groups. For example, on May 12, 2017, he commented that "It's was [sic] a great day[.] Trifecta of fun[,] played with the 4mth then 4 year old girl and then 21 [year old.] damn what a way to start the weekend lol." On August 20, 2017, in another Website B group, he expressed regret that he had not had his camera phone with him two days prior to document that he "got to finger [the infant]." And on November 20, 2017, the defendant created and became moderator of yet another Website B group devoted to sharing images of and discussing child sexual abuse—including posts of tied-up and anally penetrated children.

The defendant also used the one-on-one chat feature of Website B to share child pornography—in particular, depictions of his abuse of the infant in response to the other member's specific requests. *See, e.g.*, PSR ¶ 30. Among the one-on-one exchanges the defendant had were the following, between July 1 and November 27, 2017:

Other user: Can you make a vid how you Cum over [the infant]?

Defendant:  Yes
Defendant:  Like the last one
Other user:  Ohh yes
. . .
*Defendant posts photo of infant with apparent semen on his face*
Defendant:  [T]his was the other day
Other user:  Oh ok you have more ?
Defendant:  I just had a little time with him
Other user:  Oh ok how Many Pics you make
Other user:  ?
Defendant:  That's why I'm sorry
Defendant:  See all the cum around his mouth
. . .
Other user:  Is this the only Pic you make it that Day
Defendant:  I have some video
Other user:  Show please
Defendant:  Give me a break I had the most amazing BJ by a baby
. . .
Defendant:  Sorry I couldn't get any pics
Other user:  Why?
Defendant:  His Dad and uncle was there. . . . I did get a little lick in but that [sic]
            all[.] I didn't have my phone on me when he needed to be changed
. . .
*Defendant posts photo of himself inserting his finger into infant's anus*
Other user:  Hi
Other user:  Sweet Is He with You ?
Defendant:  YeP
Other user:  Nice
Other user:  How Long
Defendant:  So is his grandpa
Other user:  Can you make Pic Sitting on your legs
Other user:  Please
Other user:  ?
*Defendant posts photo of his penis touching the infant's penis and possibly partially inserted into infant's anus*
Defendant:  OMG I almost got caught
. . .
Other user:  Show more
*Defendant posts photo of himself inserting his finger into infant's anus*
Other user:  This you Send
Other user:  More New Pics
. . .
Other user:  Can you make more ?

5

Other user:  Please
Defendant:  I'm going to try but what you want to go to jail
Other user:  Ok try it And attention please
. . .
*Defendant posts photo of himself inserting his penis into infant's mouth*
. . .
Defendant:  I quickly snapped a couple of pictures while his mom was in the
          other room . . . .

*See generally* PSR ¶¶ 30-31, 46-50.

       C.     The Defendant's Online Exploitation of Other Children

       In addition to the abuse and exploitation of children whom he encountered in

person, the defendant used still other social media platforms to find and exploit

children beyond his physical reach.  Using one mobile application (app), he sent as

many as ten boys, aged 10 and up, images and videos of himself masturbating and

inserting objects into his anus, and having the children send him images of them

engaging in the same sexually explicit conduct.  PSR ¶ 44.  The defendant engaged in

similar exploitation of children via live webcams.  *Id.*

**III.  Sentencing Argument**

       An effective life sentence—the statutory maximum of sixty years'

imprisonment—is both the correctly calculated Guidelines sentence and sufficient but

not greater than necessary to satisfy the purposes of sentencing, as set forth in 18 U.S.C.

§ 3553(a).

       A.     The Nature and Circumstances of the Offense

       "Child sex crimes are among the most egregious and despicable of societal and

criminal offenses."  *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (en banc)

(citation omitted).  "Long-term studies show that sexual abuse is grossly intrusive in the

lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *Id.* at 1207 (collecting authority). "The damage to children who are the victims of sexual abuse is not limited to psychological and emotional injury; serious physical injuries often result as well." *Id.* (citing authorities).

"When child pornography is produced in conjunction with the sexual abuse of children, as it was here, the harm to the child victims is magnified and perpetuated." *Id.* at 1208. "[T]he materials produced are a permanent record of the children's participation," *United States v. Ferber*, 458 U.S. 747, 759 & n.10 (1982), and "[e]very instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(2)(D), 120 Stat. 587, 624 (2006) (codified at 18 U.S.C. § 2251 note).

Moreover, as shown in this very case, *see supra* Section II.B, the child pornography market is "intrinsically related to the sexual abuse of children." *Ferber*, 458 U.S. at 759; *accord Irey*, 612 F.3d at 1208. Demand for child pornography leads to abusive supplier-producers, *see, e.g.*, *United States v. Cunningham*, 680 F. Supp. 2d 844, 856 (N.D. Ohio 2010), *aff'd*, 669 F.3d 723 (6th Cir. 2012), while supplier-producers/distributors may "incite or encourage others to sexually abuse children." *Irey*, 612 F.3d at 1208.

It is thus unsurprising that when one "[m]ention[s] the term [child pornography] to your average American[,] . . . he responds with immediate disgust and a sense of

unease." *Cunningham*, 680 F. Supp. 2d at 847.  As the *Cunningham* court warned,

"[h]owever, once it enters the legal system, child pornography undergoes sterilization

. . . far beyond properly removing emotion from sentencing decisions." *Id.*; *see id.*

(expressing concern that "[i]mages are described in the most clinical sense.  Victims all

too often remain nameless.  The only emotions on display are those of defendants, sorry

that their actions were discovered by law enforcement.").  Mindful of this risk, and

without suggesting that there be any less careful consideration of the defendant's

individual circumstances (which are discussed at length above and below), the United

States adamantly believes that the harm of the defendant's offenses cannot be

exaggerated, and the plight of the defendant's victims—who may not be ready or able

to speak for themselves at this stage—must not be downplayed.

     B.    The History and Characteristics of the Defendant

     The defendant's history and characteristics are alarming and weigh heavily in

favor of a Guidelines sentence.  The evidence shows that the defendant's involvement

with child exploitation was not limited to the instant offenses of conviction but dates

back three decades.  *See supra* Section II (discussing his sexual offending against

children from the time he was a teenager until his arrest at 48 years old).  It extends

beyond the two victims of the counts of conviction to approximately 15 other victims

whom he personally abused and exploited, and to many more victims with whom he

never had direct contact but whose images of sexual abuse he trafficked for his own and

other offenders' sexual gratification.  *See id.*; *see also United States v. Sherman*, 268 F.3d

539, 547-48 (7th Cir. 2001) (recognizing that "[t]he possession, receipt and shipping of

child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters"; these children—"who must live with the knowledge that adults like [the defendant] can pull out a picture or watch a video that has recorded the abuse of [them] at any time"—"suffer a direct and primary emotional harm when another person possesses, receives or distributes the material").  Notably, the defendant eagerly and proudly self-reported to like-minded individuals in the child-pornography groups he administered and used his having sexually exploited children for years.  *See supra* Section II.B.  Nonetheless, the Guidelines calculations does not account for any of this prior and contemporaneous criminal conduct.

Also disturbing is the defendant's repeated abuse of positions of trust to commit his crimes.  As explained above, the defendant sought out and maintained roles where other adults trusted him with their children, whom he then sexually abused and exploited, confident that they would not—or in the case of the infant, could not— disclose the horrors to which he was subjecting them.

Yet his abuse of positions of trust was not limited to child exploitation.  He also used his position as treasurer of his local church to write 38 checks for personal expenses from the church checking account.  PSR ¶ 88.  For that crime, he was convicted of theft and sentenced to two years of probation.  *Id.*  Neither that encounter with the criminal justice system, nor his knowledge that his actions with respect to children were criminal and could land him in jail, however, *see supra* Section II.B, stopped him from offending.

In sum, the defendant's offenses of conviction are by no means isolated instances of breaking the law.  Instead, they show a deeply entrenched pattern of victimizing the most vulnerable members of society.  All these factors weigh strongly in favor of a Guidelines sentence.

> C.   The Need for the Sentence to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment

"There can be no keener revelation of a society's soul than the way in which it treats its children." *Cunningham*, 680 F. Supp. 2d at 847 (attributing quote to Nelson Mandela).  Sadly, "[t]he exploitation of children is pandemic.  The most vulnerable members of our society have been exploited and discarded." *Id.* at 848 (citation omitted).  To reflect the seriousness of this crime, those who participate in this evil must be punished severely.

Congress's intent to treat offenses involving child pornography severely, and its concern with below-Guidelines sentences, is evident in statutes such as 18 U.S.C. § 3553(b)(2), which permitted courts to depart below guideline ranges for such offenses only in very limited circumstances.  Although § 3553(b)(2) is no longer a mandatory limitation, in light of *Booker* concerns, the importance of sentencing courts' consideration of Congress's legislative judgment remains.  *See, e.g.*, *United States v. Pugh*, 515 F.3d 1179, 1197-98 & n.12 (11th Cir. 2016) (citing detailed congressional findings about the harm child pornography causes and recognizing that, "[i]n light of these detailed legislative findings and numerous legislative enactments, we cannot help but underscore the seriousness of this crime").

10

Notably, Congress has continued to gradually increase the penalties for these crimes, even in the face of some courts' and individuals' skepticism (at least for non-contact offenses) regarding lengthy sentences.  For example, the Child Protection Act of 2012 doubled the maximum penalty for possession of child pornography depicting prepubescent minors (which the defendant here undisputedly possessed).  Pub. L. No. 112-206, § 2, 126 Stat. 1490 (codified at 18 U.S.C. §§ 2252(b)(2), 2252A(b)(2)).  In short, Congress's actions with respect to child pornography sentences can be "viewed as a necessary response to a crime that was spiraling out of control.  As internet access grew across this county, so did the online community of pedophiles that supports the market for child pornography.  Rather than remain silent, Congress acted."  *Cunningham*, 680 F. Supp. 2d at 851.

A Guidelines sentence in this case reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment.  A lesser sentence— especially anything close to the mere statutory minimum of fifteen years for production—does not.  As the *Irey* court explained, "[a] person who traveled to another country and took a single photograph of a 17-year-old engaging in an obscene pose by herself would be guilty of violating the same statute and be subject to a mandatory minimum sentence of 15 years in prison."  *Irey*, 612 F.3d at 1209.  Given the defendant's decades of offending against numerous children—including penetrating an infant and exploiting a toddler—his sentence should be significantly "more than if all he had done was on a single occasion snap a single photo of a single, teenage child in an obscene pose by herself."  *Id.*

The United States requests that the Court impose a sentence that takes into account the full impact of the crime on the victims, remembering that the victims in this case have already been subjected to a lifelong scar worse than any punishment the defendant could now receive. Not only did the defendant sexually assault the victims, he sent images of the assaults over the internet where they will be available to others forever. For all these reasons, the Guidelines sentence is appropriate here.

> D.    The Need to Afford Adequate Deterrence to Criminal Conduct, to Protect the Public from Further Crimes of the Defendant, and to Provide the Defendant with Treatment

The sentence in this case must constitute a loud message to potential sexual offenders that severe consequences will result from such heinous acts. Indeed, "the deterrence objective of sentencing is 'particularly compelling in the child pornography context.'" *Irey*, 612 F.3d at 1211 (quoting *Pugh*, 515 F.3d at 1194). "[I]mposing a lighter sentence on one convicted of a child pornography offense 'tends to undermine the purpose of general deterrence, and in turn, tends to increase (in some palpable if unmeasurable way) the child pornography market.'" *Id.* (quoting *Pugh*, 515 F.3d at 1194); *accord United States v. Garthus*, 652 F.3d 715, 721-22 (7th Cir. 2011); *see also Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand.").

Distressingly, the market for child pornography has continued to grow, and to become more depraved, in recent years. *See, e.g., U.S. Sent'g Comm'n Hr'g on the Child Pornography Guidelines* 1-2 (Feb. 15, 2012) (statement of James M. Fottrell, Steve DeBrota

& Francey Hakes, Dep't of Justice), *available at* http://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20120215/Testimony_15_Hakes_DeBrota_Fottrell.pdf.  The need for effective deterrence through severe sentences is therefore critical.[1]

A Guidelines sentence is additionally appropriate given the "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class."  *Smith v. Doe*, 438 U.S. 84, 103 (2003).  "Studies and reports in this field are consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the threat."  *Irey*, 612 F.3d at 1214 (discussing the studies and case law); *see also Garthus*, 552 F.3d at 720 (discussing studies and highlighting that "[a] pedophilic sex offender who has committed both a child-pornography offense and a hands-on sex crime is more likely to commit a future crime, including another hands-on offense, than a defendant who has committed only a child-pornography offense"); *Cunningham*, 680 F. Supp. 2d at 855-56, 859-60 (same).

Though no study can predict whether the present defendant will or will not recidivate, this particular defendant's history and characteristics suggest those concerns are well-founded here.  As noted above, the defendant engaged in such conduct over the course of decades—all his adult life (and even as a teenager).  He was aware of the

_____

[1] *Cf. Cunningham*, 680 F. Supp. 2d at 856 ("[E]nd users are the cogs in the wheel that drive the demand for child pornography.  As technology progresses, the recipients of these images are becoming more and more difficult to find and prosecute. . . . As such, the Court finds it important to impose an appropriate sentence to alert end users to the fact that receipt and distribution in and of itself is a heinous crime deserving of a severe punishment.").

illegality of his conduct and of law enforcement efforts to catch such sexual predators, but chose to continue exploiting children and try harder to cover his tracks.[2]  Once finally discovered by law enforcement, he attempted to minimize and rationalize his behavior.  *See, e.g.*, PSR ¶ 28 (claiming that he "continued to download and trade child pornography just to give it to other people and help them"); *id.* ¶34 (telling law enforcement that he only had sexual contact with one child beyond the infant and toddler, and characterizing that sexual contact as consensual); *id.* ¶¶ 40-44 (reporting that he had provided false information to investigators regarding the extent of victims and had actually abused many other children).  In sum, the evidence shows that the defendant is a pedophile who has been unwilling and/or unable to control his urges, and has left a trail of victims in his wake.

"Nor does the fact that [the defendant] will be subject to restrictions and supervised release [if] he gets out of prison offer any guarantee that he will not commit any crimes."  *See Irey*, 612 F.3d at 1215 (discussing studies and other data showing that "supervised release . . . often fails to prevent sex offender recidivism").  In short, "[s]upervised release is better than unsupervised release, but it does not offer society the level of protection from a convicted criminal that incarceration does."  *Id.* at 1216.[3]

And even if a defendant *could* be described as a "low risk" to recidivate (though there is no evidence of this in the present case), "[a] low risk is not the same as no risk."

---

[2] For example, the defendant reported using Website B to share child pornography because he believed it was less likely to be discovered by law enforcement than other platforms.

[3] If the defendant nonetheless is released from prison at some point, the Government requests that he be subject to lifetime supervised release.

*Id.* at 1216-17.  "Adequate protection is a function of two variables: the level of risk that

conduct will occur and the level of harm that will be inflicted if that conduct does

occur."  *Id.* at 1217.  As in *Irey*, "[w]ith child sexual abuse of the kind that we know [the

defendant] is capable of and has committed, the harm is enormous and permanent.  It

can literally destroy lives.  Accordingly, even with an assumed low risk of recidivism

following release [after what must be *at least* 15 years, given the mandatory minimum],

imprisonment for that length of time does not afford adequate protection from further

crimes by him."  *Id.*; *see also Garthus*, 652 F.3d at 720 ("The sadistic nature of much of the

child pornography consumed by the defendant is another reason to worry about his

being on the loose.").

      E.    <u>The Need to Avoid Unwarranted Sentencing Disparities</u>

     A Guidelines sentence would also avoid unwarranted disparities and be

sufficient but not greater than necessary to accord with the purposes of sentencing

under 18 U.S.C. § 3553(a).  Notably, district courts within this Circuit have repeatedly

ordered, and the Seventh Circuit has repeatedly affirmed, sentences tantamount to life,

at the statutory maximum, and/or otherwise decades-long, for similar conduct.  *See,*

*e.g.*, *United States v. Bour*, 804 F.3d 880, 886-87 (7th Cir. 2015) (life sentence plus 85 years

for production involving sex acts with infant and explicit photographs of 4-to-5-year-

old); *United States v. Jines*, 595 F. App'x 886, 887-890 (7th Cir. 2015) (56 years for

production involving prepubescent daughter); *United States v. Horton*, 770 F.3d 582, 583,

585-86 (7th Cir. 2014) (90 years for production involving sex acts on prepubescent boys

over 9-month period); *United States v. Boroczk*, 705 F.3d 616, 618, 623 (7th Cir. 2013) (70

years for production involving molestation of toddlers); *United States v. Russell*, 662 F.2d 831, 852-54 (7th Cir. 2011) (effective life sentence for 48-year-old who produced lascivious images of 2 daughters); *United States v. Scholtes*, 447 F. App'x 730, 731-32 (7th Cir. 2011) (50 years for producing sexually explicit photo of 10-year-old boy defendant was chaperoning); *United States v. Huffstatler*, 571 F.3d 620, 621-22, 624 (7th Cir. 2009) (above-Guidelines sentence of 37.5 years for production involving 14-year-old); *United States v. Beir*, 490 F.3d 572, 573, 575 (7th Cir. 2007) (statutory maximum sentence of 30 years for producing images of nude prepubescent boys); *United States v. Turner*, 206 F. App'x 572, 573-74, 577-78 (7th Cir. 2006) (100 years for production involving daughter and teenage friend).[4]

So have courts in other jurisdictions.  *See, e.g.*, *Irey*, 612 F.3d at 1220-21 (providing extensive string cite of cases affirming sentences of 30 to 140 years for production offenses).  Of course, what this Court is asked to decide is not what sentence was appropriate in other cases, but what sentence is appropriate for this defendant.  The cited cases reinforce that a Guidelines sentence would not be unreasonable for this defendant and in fact is the appropriate sentence.

---

[4] *Cf. Garthus*, 652 F.3d at (30-year sentence for non-production offenses for 44-year-old offender who previously molested child); *United States v. Snodgrass*, 635 F.3d 324, 330 (7th Cir. 2011) (above-Guidelines sentence of 30 years for attempted receipt and possession, where defendant had "lifelong pattern of abusive behavior against minors"); *United States v. Maulding*, 627 F.3d 285, (7th Cir. 2010) (20-year sentence for non-production offenses); *United States v. Stinefast*, 724 F.3d 925, 933 (7th Cir. 2013) (above-Guidelines sentence of 18 years for distribution where defendant had previously had boys expose their genitals to him).

IV.   <u>Conclusion</u>

Mark Bartz is a serial sexual predator who has left a trail of victims over the course of his lifetime.  He faces an advisory Guidelines sentence of life in prison, capped at a statutory maximum of 60 years.  The Government respectfully requests that the Court impose that sentence.

Dated:  <u>October 1, 2018</u>

Respectfully submitted,

SCOTT C. BLADER
United States Attorney

By:   <u>      /s/                             </u>
ELIZABETH ALTMAN
Assistant United States Attorney

<u>      /s/                             </u>
JESSICA URBAN
Trial Attorney
Child Exploitation & Obscenity Section
U.S. Department of Justice
1400 New York Ave. NW
Washington, DC 20005

17