# FEDERAL DEFENDER SERVICES
## OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
John W. Campion
Shelley M. Fite
Anderson M. Gansner
Gabriela A. Leija
Peter R. Moyers
Ronnie V. Murray
Tom E. Phillip
Joshua D. Uller
Kelly A. Welsh

22 East Mifflin Street
Suite 1000
Madison, Wisconsin 53703

Telephone 608-260-9900
Facsimile 608-260-9901

October 3, 2018

Honorable William M. Conley
United States District Court Judge
120 North Henry Street
Madison, Wisconsin 53703

Re:  *United States v. Mark E. Bartz*
Case No. 18-cr-29-wmc

Dear Judge Conley:

This is a difficult case. In a case like this, there's a risk that anything I write will be misconstrued—either as failing to advocate for Bartz or failing to appreciate the heinous nature of his crime. I hope I strike the balance and that my reflections on this crime and Bartz's personal history and characteristics convince the Court that Bartz should be allowed to rejoin society in 22 years, when he's 70 years old. A large part of that recommendation stems from how Bartz got to this place, his lack of treatment opportunities, and the fact that when he's released the threat he poses to society will be greatly diminished.

Beginning with Bartz's personal characteristics, his difficulties in life are different from those of most people that I represent. He was not without a father or a loving home. Instead, he was born with a much larger handicap than I appreciated, a cleft palate. It wasn't until the presentence interview where Bartz

FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.

Honorable William M. Conley
October 3, 2018
Page -2-

and Rich Williams talked about Williams's uncle, who had the same problem as Bartz, that I came to appreciate what it entails and how difficult it can be.

For Bartz, it meant that he was brutally teased and bullied. He looked different and his speech was so impaired that few could understand him. He was also (according to Bartz) in special-education classes, which made things worse. With those social stigmas, he was also in-and-out of the hospital for surgeries and complications from those surgeries. While still a minor, he'd undergone twenty-nine surgeries for the cleft palate, including breaking his jaw, cutting the flesh from the back of his head and pulling it down to fit a new facial structure. *See* PSR ¶ 108. All of that comprises a difficult start, add to it a rare dental problem where he has kept baby teeth until they rotted and fell out (no adult teeth ever replaced them) and there's going to be some emotional and mental scarring. *See id.* ¶ 108. In a word, there's some real brokenness in Bartz.

In the midst of this strife and at a time of sexual awareness, he started having oral sex with a classmate. This is when he was 13. *Id.* ¶ 36. That lasted for several years, and it extended to another classmate until he turned 16, and then Bartz started to molest two children that he babysat. *Id.* ¶ 39. This continued until he was 18.

That's a disturbing childhood and a scary introduction to sexual activity. The great hope would have been that Bartz was caught either when he's having oral sex with a similarly aged friend (at 13) or when he starts to prey on younger kids (at 16). That would have brought this into the open, and he would have received treatment. A large part of the problem with his attraction to minors is that it was unaddressed. And Bartz (as a minor himself) could not navigate these emotions and urges to develop an appropriate governor. He needed help. Indeed, research indicates that if addressed early enough this behavior can be corrected.[1]

Unfortunately for Bartz and society, his attraction to minors was left to fester. He was thankfully sexually inactive for two decades from 18–40. This was

---

[1] Borduin CM, Schaeffer CM, Heiblum N. "Multisystemic treatment of juvenile sexual offenders: Effects on adolescent social ecology and criminal activity." *Journal of Clinical Pyschology* 2009 Feb. 26-37

FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.

Honorable William M. Conley
October 3, 2018
Page -3-

probably due to many factors ranging from the insecurity of his appearance, his work schedule, and his own conflicted feelings about being gay. During this time, he was active in his church and listening to Bartz, church was not a small part of his life—nor do I believe that he used it as a preying ground for children. Instead, it provided him a sense of refuge and spiritual sustenance in the midst of life's turmoil.

In a word, Bartz's faith is a part of his life, despite his actions that do not conform with that faith or any sense of appropriate human conduct. To counsel, Bartz has spoken about how he once died on the operating table and how in the midst of all the difficulty he experienced as a youth that it was the family's pastor who provided him counsel and comfort. And even today, he stays in touch with his church's pastor. *See id.* ¶¶ 99, 106. And it speaks to his sincerity and humility that after he admitted stealing from the church, he was forgiven and welcomed back with open arms. *Id.* ¶ 106.

I haven't recited that all in a plea for sympathy or to tout Bartz's good deeds in an effort to off-set what he's done—there is no off-setting his crimes. Rather, that recitation is to present a nuanced and accurate sense that though Bartz's actions were monstrous, they are not the only part of him. This is not a person who lived to molest children; instead, he stands as a complex and broken person, who at times did good, but also did some incredibly evil acts. Simply defining him in terms of this crime fails to capture the rest of him and why there is real hope that when released at 70, he will not pose a danger to society.

The first question that this Court is likely struggling with is what led to this terrible string of crimes upon his family? There is no clear answer that the defense can provide. It's not that all was well until X date and then something was triggered. Instead, it seems—and I write seems because I have no true idea—that it was a crime of opportunity. Here's what I mean by that: this attraction to children clearly plagued Bartz for years. He hated himself and resented his inability to form mature relationships. Insecure about his appearance and other aspects of his sex life, he focused on children. *See* PSR ¶ 36 (sex); *id.* ¶ 37 (appearance). And the only children that Bartz had access to were in his family—

FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.

Honorable William M. Conley
October 3, 2018
Page -4-

few would likely trust him around their kids, but given the proximity that poverty provided, he had unsupervised access to his nephews and niece.

During that time, he did terrible things to them. And those immoral urges and behavior were amplified when Bartz got a smart phone and started devouring child pornography and talking in chat groups with other like-minded individuals. There, he was free of the restraints of polite society and could and did talk about things that shame and moral sense should have kept him from discussing.

Sitting through the day-long debrief with Bartz and the investigators about these sites, it was evident the internet's echo chamber of deviance drove Bartz deeper into this life. Where he did not respect his minor nephews' dignity and violated them, it was something else to assault an infant and a toddler, and then share those images with the world. Bartz's remorse over this and *all* of his behavior is palpable. He couldn't get through the plea hearing without breaking down and he was very emotional in the presentence interview trying to voice his regret—and, for that matter, he should be.

For this criminal behavior, Bartz has to be punished. There was never a plea pitch made to the government, nor was there ever an idea that this was a 15-year, mandatory-minimum case. Instead, the defense has always vacillated between twenty and twenty-five years, and I have settled on 22 years for a specific reason (his release at 70) that is supported by the three key drivers of any sentencing: deterrence, protection of the public, and just punishment.

When it comes to deterrence, this sentence will (sadly) not stem the tide of child-sexual abuse. Those who engage in this are not governed by the normal cost-benefit analysis. And the government's argument that greater punishment will provide deterrence is both myopic and belied by experience. The unbelievably long drug sentences in the 80's and 90's didn't stem the tide of drug abuse, nor did the life sentences parenthetically cited in the government's brief play into Bartz's or anyone else's mind, who produces child pornography. Those who engage in this are deterred by being caught and exposed—that's it. Because when they are caught, the punishment is always going to be severe; thus, whether the sentence is 240 months or 240 years, it won't move the needle on general deterrence. The

FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.

Honorable William M. Conley
October 3, 2018
Page -5-

message with both of those sentences is that this conduct is not tolerated and will be punished severely.

The question of specific deterrence is different. Punishment is surely on Bartz's mind. But it's not as much as the Court might imagine; instead, he's coming to grips with what he's done and his need to atone for it. That being said, deterrence from going back to this behavior is not simply a matter of Bartz's personal resolve; instead, it's a matter of eliminating opportunity and giving him the therapy he desperately needed when he first engaged in this behavior—when he was 16. Bartz needs therapy and hopefully he'll get it in the BOP; and if not there, he will get it when he gets out on supervised release.

Specific deterrence for a 70-year-old Mark Bartz also entails not just therapy but strict conditions of supervised release. He has to be on a tight leash, and the conditions of supervised release while they do not hermetically seal off Bartz from every conceivable opportunity, they do make it difficult if not all but impossible for him to do this again. So 22 years provides ample specific deterrence for Bartz, especially when it's coupled with therapy and the conditions of supervised release, which will last his entire life.

Then there's the matter of protection of the public. Society has to be made safe. The question is what additional protection is society rendered in the years *after* Bartz turns 70? Without question, people can commit crimes in their 70s, and it can be done while under lifetime supervision. But it's highly unlikely. Indeed, statistics establish that recidivism rates for those over 65 is 2.1%.[2]

Those statistics can be a product of many things, maturity, frailty, or life expectancy. It is said that each year spent in prison lowers a person's life span by a year or more.[3] So, given the 22 years that Bartz will spend incarcerated, he will

---

[2] United States Sentencing Commission. "The Effects of Aging on Recidivism Among Federal Offenders." December 2017, page 14.

[3] Evelyn J. Patterson, "The Dose–Response of Time Served in Prison on Mortality: New York State, 1989–2003", 103 *American Journal of Public Health* No. 3 (March 1, 2013): pp. 523-528 (the ratio is actually close to 1-2, so that each year in prison decreases the inmate's life span by two years but other research suggests it is closer to 1:1, whatever ratio is applied, prison has an impact on a person's life span)

FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.

Honorable William M. Conley
October 3, 2018
Page -6-

not be long for this world. His experience of life at 70 will not be a lively 70, which is now described as the new 50. Instead, he will be run-down, tired, and happy to enjoy a few years of freedom before passing. It's highly unlikely (though concededly not impossible) that those last years, under the watchful eye of probation, would be spent finding new victims. Thus, protection of the public can be achieved with a sentence of 22 years.

That leaves the question of just punishment. Some in society would say LIFE, that's it. That's an understandable and yet visceral reaction to the crime. It's not parsing culpability and discerning a sentence sufficient but not greater than necessary. No amount of time will bring healing to Bartz's victims. It's not as though the victims will feel that Bartz got his due with 265 months, but 264 months (22 years) was too lenient. We are, after all, talking about a sentence (22 years) that until recently was considered a very long time. In Wisconsin, for first degree murder, the judge can set a parole-eligible date for 20 years after confinement—and that's for premeditated murder. *See* Wis Stat § 973.014(1g)(a)(1). Here, the defense is recommending two years over that.

All of that is to say, that when the parties are talking about sentences in excess of two decades, it's hard to nail an appropriate number that provides a just sentence. And a court can't arrive at that number apart from considering the defendant's age and characteristics. Here, the fact that the sentence will provide Bartz his first taste of freedom at 70 has to weigh heavy in the balance.

Those three points militate towards a 22-year sentence, but these five additional points also support the defense's recommendation.

FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.

Honorable William M. Conley
October 3, 2018
Page -7-

1. He has shown true remorse for this, and the shame over his conduct is palpable.

2. He is the type of offender who with the exposure his arrest and conviction bring, he will be amenable to treatment and reforming his life.

3. This is Bartz's first time in prison and there is nothing to suggest that two decades there will *not* have the desired effect of helping him reform his life.

4. His remorse extended beyond words, with his attorney, he sat down with the government for a full day and debriefed, helping them understand the website that he used and gave them all his passwords to help catch others.

5. After his teenage babysitting assaults, he did not target children outside his family to *physically* assault. That is, he was not seeking out other children, recruiting them and grooming them to molest them. It happened with his family, and he will no longer have access to them or to any children on supervised release.

All of that taken together should support the defense's recommendation and give the Court ample reason to sentence Bartz to twenty-two years of imprisonment.

Sincerely,

*/s/ Joseph A. Bugni*

Joseph A. Bugni
Associate Federal Defender

cc:    AUSA Elizabeth Altman
       Mr. Mark E. Bartz